**FILED**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF SOUTH DAKOTA**
**SOUTHERN DIVISION**

DEC 1 2 2012

CLERK

| | | |
|---|---|---|
| **GENERAL MOTORS LLC,** | § | |
| | § | |
| Plaintiff, | § | Case No. C I V 12-4209 |
| | § | |
| v. | § | |
| | § | |
| **RAPP CHEVROLET, INC.,** | § | |
| | § | |
| Defendant. | § | |

## COMPLAINT

Plaintiff General Motors, LLC ("GM") files this complaint against Rapp Chevrolet, Inc.

("Rapp") and alleges as follows:

### I. PARTIES

1.      General Motors, LLC is a Delaware corporation with a place of business located

at 400 Renaissance Center, Detroit, Michigan 48243.

2.      On information and belief, Rapp Chevrolet, Inc., is a South Dakota corporation

with its principal place of business located at 700 S. Broadway Avenue, Marion, South Dakota

57043.

### II. JURISDICTION AND VENUE

3.      This Court has subject matter jurisdiction under 15 U.S.C. §1121(a), 28 U.S.C.

§1331, and 28 U.S.C. §1338 in that this case arises under the Trademark Law of the United

States, 15 U.S.C. §§1051, *et. seq.*  The Court has supplemental jurisdiction over GM's pendant

state law claims pursuant to 28 U.S.C. § 1367.

4.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) because

Defendant has its principal place of business and/or resides within this District and, alternatively,

1

pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to GM's claims occurred within this District.

## III. COMMON ALLEGATIONS

### A. **GM and Its Valuable Trademarks**

5.       GM, one of the world's largest automakers, traces its roots back to 1908.  With its global headquarters in Detroit, GM employs 202,000 people in every major region of the world and does business in some 120 countries.  GM and its strategic partners produce, sell and service motor vehicles through brands that include Buick, Cadillac, Chevrolet, and GMC. Genuine GM Parts and accessories are sold under the GM and GM Goodwrench brands, among others, through GM Service and Parts Operations, which supplies GM dealerships and distributors worldwide.

6.       Through official licensed dealerships and other GM-authorized service providers, GM offers a full range of automotive repair and maintenance services to owners of GM vehicles across the United States and the world.  GM offers these services under the CADILLAC, GM, BUICK, GMC, CHEVROLET, GOODWRENCH, GM GOODWRENCH, and other related marks.

7.       GM also takes great care to assure the quality and consistency of the goods and services offered at each of its company-owned and authorized locations.  Licensees are required to follow GM's guidelines for the use of its trademarks and service marks, and GM monitors licensees' operations for compliance with these requirements.

8.       For these and other reasons, GM's CADILLAC, GM, BUICK, GMC, CHEVROLET, GOODWRENCH, GM GOODWRENCH, and related marks enjoy a high degree of recognition and goodwill throughout the United States and the world.

2

9.      GM has established valuable and enforceable trademark and service mark rights in its family of marks—including, of particular relevance to this lawsuit, its marks related to the sale, repair and maintenance of automobiles—through bona fide use of these marks in commerce and related advertising.

10.     In recognition of the goodwill and distinctiveness inherent in GM's family of marks, the U.S. Patent and Trademark Office has issued to GM numerous U.S. Trademark and Service Mark Registrations, including but not limited to the registrations attached as **Ex 1**.

11.     GM's foregoing family marks and related common-law marks—which GM shall refer to collectively as the "GM Marks"—embody GM's considerable goodwill, and are extremely valuable assets.  As a result of the extensive sales, advertising, promotion, and overall use of these marks in commerce, these marks are strong, and many of them have achieved significant fame.

### B. Rapp's Unauthorized Use of the "Chevrolet" Trademark and Trade Name

12.     On or about November 1, 2005, Rapp entered into a Dealer Sales and Service Agreement (the "Dealer Agreement," **Ex 2**) with General Motors Corporation ("Old GM").  The Dealer Agreement authorized Rapp to conduct business as an authorized Chevrolet dealer, subject to certain terms and conditions.  The Dealer Agreement superseded any prior agreements there may have been between the parties.

13.     On June 1, 2009, Old GM filed a voluntary Chapter 11 petition (Case No. 09-50026 (REG)) in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court").

14.     Recognizing that one of Old GM's principal business problems was an excessive number of authorized dealerships, Old GM, under the auspices of the Bankruptcy Court, entered

3

into "Wind-Down Agreements" with a number of GM dealerships as an alternative to rejecting these dealerships' dealer agreements pursuant to Section 365 of the Bankruptcy Code. Under the Wind-Down Agreements, non-retained dealers received compensation and were permitted to continue certain dealership operations until an agreed upon termination date.

15.     For the 60 GM dealerships that refused to sign a "Wind-Down Agreement," including Rapp, on August 21, 2009, the Bankruptcy Court issued an Order Pursuant to 11 U.S.C. §§ 105 and 365 authorizing Old GM to reject its Dealer Agreements with those dealerships (the "Rejection Order," **Ex 3**), effective July 10, 2009.

16.     The Bankruptcy Court further stated in its Rejection Order that each "Affected Dealer," including Rapp, was "no longer authorized to . . . display, distribute or otherwise use any signage, promotional or other materials bearing or containing the Debtors' or New GM's trademarks, trade names, and service marks, except that it may use the Debtors' or New GM's descriptive brand and vehicle model names solely for the purpose of identifying and advertising its inventory for sale to the extent permitted by applicable law for a party that is not an Authorized Dealer of the Debtors."

17.     Moreover, Article 17.5 of the Dealer Agreement prohibits Rapp's use of GM's trademarks after the Dealer Agreement terminates:

> Upon termination of this Agreement, Dealer agrees to immediately discontinue, at its expense, all use of [GM trademarks, i.e., "Marks"]. Thereafter, Dealer will not use, either directly or indirectly, any Marks or other confusingly similar marks in a manner that General Motors determines is likely to cause confusion or mistake or deceive the public.
>
> Dealer will reimburse Division for all legal fees and other expenses incurred in connection with action to require Dealer to comply with this Article 17.5.

4

18.     Effective July 10, 2009, the Dealer Agreement terminated.    Rapp has a contractual obligation to discontinue display and use of the GM Marks on the Premises or its website.

19.     Nevertheless, Rapp has continued to use the name "Rapp Chevrolet" on its website, http://www.rappchevrolet.com, display signs with the Chevrolet name and logo, and hold itself out to the public as "Rapp Chevrolet" in connection with its sale of used automobiles and related services at 700 South Broadway Avenue, Marion, South Dakota 57043.

### C.  GM's Repeated Efforts to Amicably Resolve this Dispute

20.     On May 25, 2011, GM sent Rapp a cease and desist letter demanding that Rapp cease its unauthorized use of the GM Marks in connection with its website and its sale of used automobiles (attached as **Ex 4**).

21.     On June 4, 2011, Rapp responded to GM's letter, indicating that it would continue to hold itself out to the public as "Rapp Chevrolet" (attached as **Ex 5**).

22.     On June 10, 2011, and July 22, 2011, GM sent additional cease and desist letters (attached as **Exs 6** and **7**) to Rapp explaining that its use of the "Chevrolet" trade name was illegal and unauthorized.  Rapp did not respond to these letters.

23.     On September 13, 2012, GM sent Rapp a final cease and desist letter (attached as **Ex 8**) offering to bear the expense of remedying Rapp's infringement and notifying Rapp that if it did not remedy its infringement of the GM Marks, GM would file suit to enforce its rights.

24.     Mr. Glen Rapp, president of Rapp, replied to GM in an undated letter (attached as **Ex. 9** ) mailed on October 3, 2012.  Mr. Rapp did not agree to discontinue Rapp's improper use of GM's trademarks and, instead, claimed that Rapp "is not presently using and has not used General Motors trademarks" since the termination of the Dealer Agreement.  Incredibly, Mr.

5

Rapp's assertions were made under "RAPP CHEVROLET" letterhead and contained in an envelope (also attached as **Ex. 10**) emblazoned "RAPP CHEVROLET" and advertising www.rappchevrolet.com.

25.     Despite GM's repeated attempts to amicably resolve this dispute, Rapp has continued its unauthorized use of the GM Marks.

## COUNT I – TRADEMARK AND SERVICE MARK INFRINGEMENT

26.     GM incorporates herein by reference each of the preceding paragraphs.

27.     GM owns registered trademarks and trade names for its vehicle line-makes (including Buick, Cadillac, Chevrolet, GMC, and Pontiac) and vehicle service programs (including Mr. Goodwrench).  In violation of 15 U.S.C. § 1114 and/or 1125(a), Defendant is displaying, without license or permission, GM's trademarks and trade names in connection with its used automobile business located at 700 South Broadway Avenue Marion, South Dakota in a manner that is likely to confuse actual and potential GM customers.

28.     Defendant has no right or authority to perform, sell, or otherwise offer in commerce any services in connection with the GM Marks.

29.     Despite GM's repeated demands that Defendant cease and desist from infringing GM's trademarks and trade names, Defendant has refused and failed to do so.

30.     Defendant's actions constitute infringement of the GM Marks under 15 U.S.C. §§1114,1125(a) and other applicable state and common laws.

31.     As a direct and proximate result of Defendant's infringement of the GM Marks, GM has been damaged and is threatened with future damage in an amount that is not readily ascertainable.

11371815.1

32.     Unless Defendant, its officers, directors, employees, agents, and others acting in concert with them are restrained and enjoined from further infringement, GM will suffer irreparable harm for which it has no adequate remedy at law.

33.     At all material times, Defendant's infringing activity has been willful, knowing, and intentional.

## COUNT II – UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN

34.     GM incorporates herein by reference each of the preceding paragraphs.

35.     By virtue of the actions described above, Defendant has unfairly competed with GM, and has caused, and is causing, a likelihood of confusion, mistake, or deception as to the affiliation, connection, or association of Defendant with GM, or as to the origin, sponsorship, or approval of Defendant's goods, services, or commercial activities by GM, all in violation of 15 U.S.C. §1125 and other applicable state and common laws.

36.     By virtue of the actions described above, Defendant has misrepresented the nature, characteristics, or qualities of Defendant's goods, services, or commercial activities, all in violation of 15 U.S.C. §1125 and other applicable state and common laws.

37.     At all material times, Defendant's actions have been willful, knowing and intentional.

38.     Said actions have caused injury to GM, and Defendant is liable to GM for the same.

## COUNT III – DILUTION

39.     GM incorporates herein by reference each of the preceding paragraphs.

40.     One or more of the GM Marks have become famous and distinctive in the United States and worldwide through the extensive, continuous and exclusive use of them in connection

7

with GM's products and services. These marks were famous prior to any use of these marks or similar marks by Defendant.

41.     Despite knowledge of GM's famous trademarks and trade names, Defendant used and continues to use in commerce spurious and colorable imitations thereof in connection with the advertisement, promotion, and display of the name "Rapp Chevrolet."

42.     Defendant's actions as described herein have caused and continue to cause irreparable injury to, and a likelihood of dilution of, the distinctive quality of the famous GM Marks in violation of GM's rights under 15 U.S.C. §1125(c) and common law. Defendant's wrongful use of GM's famous trademarks and trade names is likely to dilute the distinctive nature of those marks and to tarnish their reputation.

43.     Defendant has used and continues to use in commerce the GM Marks and/or closely similar marks willfully and with the intent to dilute the marks. Accordingly, this is an exceptional case within the meaning of 15 U.S.C. §1117(a).

44.     As a direct and proximate result of Defendant's conduct, GM has suffered irreparable harm to the valuable GM Marks, and other damages in an amount to be proved at trial. Unless Defendant is enjoined, the valuable GM Marks will continue to be irreparably harmed and likely to be diluted.

45.     GM has no adequate remedy at law that will compensate for the continued and irreparable harm it will suffer if Defendant's actions are allowed to continue.

## COUNT IV – BREACH OF DEALER AGREEMENT

46.     GM incorporates herein by reference each of the preceding paragraphs.

47.     Rapp has breached, and is continuing to breach, Article 17.5 of the Dealer Agreement by using and displaying GM's trademarks and trade names at its business premises,

8

including without limitation, holding itself out on its website, at its premises, and in its advertising as "Rapp Chevrolet."

48.     As a direct and proximate result of this breach, GM has been damaged and is threatened with future damage in an amount that is not readily ascertainable.

49.     Unless Defendant, its officers, directors, employees, agents, and others acting in concert with them are restrained and enjoined from using and displaying GM's trademarks and trade names, GM will suffer irreparable harm for which it has no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, GM respectfully requests entry of a judgment granting relief against the Defendant as follows:

A.     A determination that Defendant willfully and deliberately violated 15 U.S.C. §1114, that GM has been damaged by such violation, and that the Defendant is liable to GM for such violation;

B.     A determination that Defendant violated 15 U.S.C. §§1125(a), (c), and (d)(1)(A)-(B), that GM has been damaged by such violations, and that Defendant isliable to GM for such violations;

C.     A determination that the Defendant committed common law trademark infringement, that GM has been damaged by such infringement, and that Defendant is liable to GM for common law trademark infringement;

D.     A determination that this case is "exceptional" in the sense of 15 U.S.C. §1117(a);

F.     A determination that Defendant has breached Article 17.5 of the Dealer Agreement, that GM has been damaged by such violations, and that Defendant is liable to GM for such violations;

9

E.      Under all claims for relief, that an injunction be temporarily, preliminarily, and permanently issued enjoining Defendant and its officers, employees, agents, successors and assigns, and all those in active concert and participation with them, and each of them who receives notice directly or otherwise of such injunctions, from:

(1)      displaying, imitating, copying, or making any unauthorized use of the GM Marks, or marks likely to cause confusion with them;

(2)      importing, manufacturing, producing, distributing, circulating, selling, offering for sale, advertising, promoting or displaying any service or product using any simulation, reproduction, counterfeit, copy, or colorable imitation of the GM Marks;

(3)      using any simulation, reproduction, counterfeit, copy or colorable imitation of the GM Marks in connection with the promotion, advertisement, display, sale, offer for sale, manufacture, production, circulation or distribution of any product or service;

(4)      using any false designation of origin or false description (including, without limitation, any letters, symbols, or designs constituting the GM Marks) or performing any act, which can, or is likely to, lead members of the trade or public to believe that any service or product manufactured, distributed or sold by Defendant is in any manner associated or connected with GM or the GM Marks, or is sold, manufactured, licensed, sponsored, approved or authorized by GM;

(5)      all of the above with the exception of nominative fair use of the GM Marks.

F.      An Order permitting an authorized designee of GM to enter the Premises and remove any other unauthorized display of the GM Marks, at Defendant's expense;

G.      An Order directing that Defendant deliver for destruction all products, promotional and advertising materials, labels, tags, signs, prints, packages, videos or other materials in its possession or under its control, bearing or using unauthorized versions of the GM Marks or any simulation, reproduction, counterfeit, copy or colorable imitation thereof, and all plates, molds, matrices and other means of making the same, pursuant to 15 U.S.C. § 1118;

10

H.     An Order directing such other relief as the Court may deem appropriate to prevent the trade and public from deriving the erroneous impression that any service or product manufactured, sold or otherwise circulated or promoted by Defendant is authorized by GM or related in any way to GM's products and services;

I.     An Order directing the Defendant and its agents, employees, servants, attorneys, successors, and assigns, and all others in privity or acting in concert therewith, to file with this Court, and serve upon GM's counsel within thirty (30) days after entry of such judgment, a written report under oath, setting forth in detail the manner and form in which they have complied with such judgment;

J.     An award of GM's costs and disbursements incurred in this action, including GM's reasonable attorney's fees;

K.     An award of GM's damages trebled or, alternatively, an award of Defendant's wrongful profits trebled, whichever is greater, plus GM's costs and attorney's fees, pursuant to 15 U.S.C. § 1117;

L.     An award to GM of its costs incurred in this action, including an award of reasonable attorney fees under 17 U.S.C. § 1114;

M.     As award to GM of statutory damages under 15 U.S.C. §1125(d);

N.     An award of GM's damages arising out of Defendant's acts;

O.     An award of interest, including pre-judgment interest on the foregoing sums;

P.     Such other and further relief as the Court may deem just and appropriate.

11371815.1

Respectfully submitted,

Dated:  December **12**, 2012

CADWELL SANFORD DEIBERT & GARRY LLP

By: _____
James S. Simko
200 East 10th Street - Suite 200
P.O. Box 2498
Sioux Falls, SD 57104-2498
(605) 336-0828

Lawrence J. Murphy (P47129)
HONIGMAN MILLER SCHWARTZ
and COHN LLP
2290 First National Building
660 Woodward Avenue
Detroit, MI 48226-3506
(313) 465-7000

**Attorneys for Plaintiff**

11371815.1