UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | | |
|---|---|---|
| GENERAL MOTORS, LLC, | * | CIV 12-4209-RAL |
| | * | |
| Plaintiff, | * | |
| | * | OPINION AND ORDER |
| vs. | * | GRANTING PLAINTIFF'S |
| | * | MOTION FOR PARTIAL |
| RAPP CHEVROLET, INC., | * | SUMMARY JUDGMENT |
| | * | |
| Defendant. | * | |

Plaintiff General Motors, LLC ("GM"), on December 12, 2012, filed a Complaint against Rapp Chevrolet, Inc. ("Rapp") for trademark and service mark infringement, unfair competition and false designation of origin, trademark dilution, and breach of a Dealer Agreement. Doc. 1. GM invoked federal jurisdiction under the Lanham Act, 15 U.S.C. § 1051, et seq., and 28 U.S.C. §§ 1331 and 1338. Doc. 1. GM also invoked the doctrine of supplemental jurisdiction over GM's pendant state law claims. Doc. 1. Rapp filed a brief Answer, Doc. 7, containing a general denial of GM's claims without raising any affirmative defenses.

GM, on February 27, 2013, filed Plaintiff's Motion for Partial Summary Judgment as to Liability, Entry of Permanent Injunction, and to Stay Discovery While Motion is Pending, Doc. 12, together with a Statement of Undisputed Material Facts, Doc. 17, a Memorandum of Law, Doc. 15, and other supporting documents. Rapp, on March 19, 2013, filed a motion to enlarge its time to respond, Doc. 20, which this Court granted through an Order Granting Motion to Extend Deadline, Doc. 21. That Order entered on March 28, 2013, gave Rapp a fourteen-day extension to respond to GM's motion for partial summary judgment and supporting documents, making Rapp's responsive pleadings due on or before April 11, 2013. Doc. 21. Rapp did not

file any responsive pleadings by April 11, 2013, and indeed has not filed anything with this Court since March 19, 2013, when it filed its motion seeking an additional fourteen days to respond to GM's Motion for Partial Summary Judgment. For the reasons explained, this Court grants GM's Motion for Partial Summary Judgment but denies GM's request to stay discovery.

## I. Material Facts Left Undisputed

By Local Rule, a party seeking summary judgment must file a "Statement of Material Facts as to which the moving party contends there is no genuine issue to be tried." D.S.D. Civ. L.R. 56.1(A). GM complied with this Local Rule. Doc. 17. By Local Rule, a party opposing a motion for summary judgment is required to respond to the moving party's statement of material facts and to identify "any material facts as to which it is contended that there exists a genuine material issue to be tried." D.S.D. Civ. L.R. 56.1(B); see also Fed. R. Civ. P. 56(c). Local Rule 56.1(D) then provides:

> All material facts set forth in the movant's statement of material facts will be deemed to be admitted unless controverted by the opposing party's statement of material facts.

Rapp has not contested any part of the Statement of Material Facts filed by GM. Thus, under Local Rule 56.1(D), GM's Statement of Material Facts is deemed admitted and provides the material facts now set forth.

GM, one of the world's largest automakers, traces its roots back to 1908. Doc. 17 at ¶ 1. With its global headquarters in Detroit, Michigan, GM employs over 200,000 people throughout the world and does business in some 120 countries. Doc. 17 at ¶ 2. GM and its strategic partners produce, sell, and service motor vehicles though brands that include Buick, Cadillac, Chevrolet, and GMC. Doc. 17 at ¶ 3. Genuine GM parts and accessories are sold

under the GM and GM Goodwrench brands, among others, and sold through GM Service and Parts Operations, which supplies GM dealerships and distributors worldwide. Doc. 17 at ¶ 3.

Through official licensed dealerships and other GM authorized service providers, GM offers a full range of automotive repair and maintenance services to owners of GM vehicles across the United States and the world. Doc. 17 at ¶ 4. GM offers these services under the Cadillac, GM, Buick, GMC, Chevrolet, Goodwrench, GM Goodwrench, and other related marks. Doc. 17 at ¶ 4. GM also takes care to assure the quality and consistency of the goods and services offered at each of its company-owned and authorized locations. Doc. 17 at ¶ 5. Licensees are required to follow GM's guidelines for the use of its trademarks and service marks, and GM monitors licensees' operations for compliance with these requirements. Doc. 17 at ¶ 5. For these and other reasons, GM's Cadillac, GM, Buick, GMC, Chevrolet, Goodwrench, GM Goodwrench, and related marks ("GM Marks" or "Marks") enjoy a high degree of recognition and goodwill throughout the United States and much of the world. Doc. 17 at ¶ 5. The GM Marks embody GM's considerable goodwill, and are extremely valuable assets. Doc. 17 at ¶ 8. As a result of the extensive sales, advertising, promotion, and overall use of these marks in commerce, these marks are strong, and many of them have achieved significant fame. Doc. 17 at ¶ 8.

GM has established a valuable and enforceable trademark and service mark right in its family of marks through bona fide use of these marks in commerce and related advertising. Doc. 17 at ¶ 6. In recognition of the goodwill and distinctiveness inherent in GM's trademarks, the United States Patent and Trademark Office has issued to GM numerous U.S. Trademark and Service Mark Registrations. Doc. 17 at ¶ 7. Of particular relevance to this lawsuit, GM's family

of Chevrolet marks are valid and enforceable and associated with GM in the sale, repair, and maintenance of motor vehicles. Doc. 17 at ¶ 6.

On or about November 1, 2005, Rapp entered into a Dealer Sales and Service Agreement (the "Dealer Agreement") with General Motors Corporation ("Old GM"). Doc. 17 at ¶ 9. The Dealer Agreement authorized Rapp to conduct business as an authorized Chevrolet dealer, subject to certain terms and conditions. Doc. 17 at ¶ 10. The Dealer Agreement superseded any prior agreements there may have been between the parties. Doc. 17 at ¶ 10.

On June 1, 2009, Old GM filed a voluntary Chapter 11 petition (Case No. 09-50026 (REG)) in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"). Doc. 17 at ¶ 11. Recognizing that one of Old GM's principal business problems was an excessive number of authorized dealerships, Old GM, under the auspices of the Bankruptcy Court, entered into "Wind-Down Agreements" with a number of GM dealerships as an alternative to rejecting these dealerships' Dealer Agreements pursuant to § 365 of the Bankruptcy Code. Doc. 17 at ¶ 12. Under the Wind-Down Agreements, non-retained dealers received compensation and were permitted to continue certain dealership operations until an agreed-upon termination date. Doc. 17 at ¶ 12.

Rapp was among the 60 GM dealerships that refused to sign a "Wind-Down Agreement." For those dealerships, on August 21, 2009, the Bankruptcy Court issued an Order Pursuant to 11 U.S.C. §§ 105 and 365 (the "Rejection Order") authorizing Old GM to reject its Dealer Agreements with those dealerships effective July 10, 2009. Doc. 17 at ¶ 13. The Bankruptcy Court also stated in its Rejection Order that each "Affected Dealer," which are those dealers who refused to sign and include Rapp, was "no longer authorized to . . . display, distribute or

otherwise use any signage, promotional or other materials bearing or containing the Debtors' or New GM's trademarks, trade names, and service marks, except that it may use the Debtors' or New GM's descriptive brand and vehicle model names solely for the purpose of identifying and advertising its inventory for sale to the extent permitted by applicable law for a party that is not an Authorized Dealer of the Debtors." Doc. 17 at ¶ 14.

Article 17.5 of the Dealer Agreement prohibits Rapp's use of GM's trademarks after the Dealer Agreement terminates:

> Upon termination of this Agreement, Dealer agrees to immediately discontinue, at its expense, all use of [GM Marks]. Thereafter, Dealer will not use, either directly or indirectly, any Marks or other confusingly similar marks in a manner that General Motors determines is likely to cause confusion or mistake or deceive the public.
>
> Dealer will reimburse Division for all legal fees and other expenses incurred in connection with action to require Dealer to comply with this Article 17.5.

Doc. 17 at ¶ 15. Effective July 10, 2009, Rapp's Dealer Agreement terminated. Doc. 17 at ¶ 16. From that point forward, Rapp had a contractual obligation to discontinue display and use of GM Marks, including Chevrolet Marks, on the premises or its website, other than for identification and advertising of what was in its vehicle inventory. Doc. 17 at ¶ 16.

After the Dealer Agreement terminated, Rapp has continued to use the name "Rapp Chevrolet" on its business premise and on its website, www.rappchevrolet.com, and to hold itself out to the public as "Rapp Chevrolet" in connection with its sale of used automobiles and related services at 700 South Broadway Avenue, Marion, South Dakota. Doc. 17 at ¶ 17. On May 25, 2011, GM sent Rapp a cease and desist letter demanding that Rapp cease its unauthorized use

of the GM Marks in connection with its website and its sale of used automobiles. Doc. 17 at ¶ 18. On June 4, 2011, Rapp responded to GM's letter, indicating that it would continue to hold itself out to the public as "Rapp Chevrolet." Doc. 17 at ¶ 19. On July 13, 2011 and July 22, 2011, GM sent additional cease and desist letters to Rapp explaining that its use of the "Chevrolet" trade name was illegal and unauthorized. Doc. 17 at ¶ 20. Rapp did not respond to these letters. Doc. 17 at ¶ 20.

On September 13, 2012, GM sent Rapp a final cease and desist letter offering to bear the expense of remedying Rapp's infringement and notifying Rapp that if it did not remedy its infringement of the GM Marks, GM would file suit to enforce its rights. Doc. 17 at ¶ 21. Glen Rapp, president of Rapp, replied to GM in an undated letter mailed on October 3, 2012, and claimed that Rapp "is not presently using and has not used General Motors trademarks" since the termination of the Dealer Agreement. Doc. 17 at ¶ 22. Mr. Rapp's assertions were made on "Rapp Chevrolet" letterhead and contained in an envelope emblazoned "Rapp Chevrolet" and advertising the website www.rappchevrolet.com. Doc. 17 at ¶ 23.

Despite GM's repeated attempts to have Rapp discontinue holding itself out as "Rapp Chevrolet," Rapp has continued to do so. Doc. 17 at ¶ 24. Rapp expanded its use of GM's marks by creating a "Rapp Chevrolet" Facebook page on or about March 30, 2012. Doc. 17 at ¶ 24. As of the date of this Opinion and Order, Rapp's website remains www.rappchevrolet.com and its full name remains Rapp Chevrolet, Inc. with its d/b/a as Rapp Chevrolet.

## II. Discussion

### A. Summary Judgment Standard

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is proper

when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Summary judgment is not "a disfavored procedural shortcut, but rather . . . an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and inexpensive determination of every action.'" Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1). On summary judgment, courts view "the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party." E.E.O.C. v. CRST Van Expedited, Inc., 679 F.3d 657, 686 (8th Cir. 2012) (quoting Mayer v. Countrywide Home Loans, 647 F.3d 789, 791 (8th Cir. 2011)). A party opposing a properly made and supported motion for summary judgment must cite to particular materials in the record supporting the assertion that a fact is genuinely disputed. Fed. R. Civ. P. 56(c)(1); Gacek v. Owens & Minor Distrib., Inc., 666 F.3d 1142, 1145 (8th Cir. 2012).

### B. Trademark Claims

#### 1. Trademark Infringement

To be entitled to summary judgment on its trademark infringement claim, GM, the trademark owner, must show the absence of any genuine dispute that it owns the mark and that Rapp has used the mark in connection with goods and services in a manner that creates a likelihood of confusion by the consumer about the source or sponsorship of the goods or services. Cmty. of Christ Copyright Corp. v. Devon Park Restoration Branch of Jesus Christ's Church, 634 F.3d 1005, 1009 (8th Cir. 2011); see also B & B Hardware, Inc. v. Hargis Indus., Inc., 569 F.3d 383, 389 (8th Cir. 2009) (" To prove a trademark infringement claim, a plaintiff must show that it has a valid, protectible mark and that there is a likelihood of confusion between its mark and the defendant's mark."). GM has established its ownership rights to GM marks,

including the Chevrolet mark, both through federal registration and continuous, national use. See Doc. 13-1. Federal registration is prima facia evidence of GM's ownership and exclusive right to use such a mark. 15 U.S.C. §§ 1057(b) and 1115(a). Registration "creates a presumption that the registrant is entitled to use the registered mark throughout the nation." Draeger Oil Co., Inc. v. Uno-Ven Co., 314 F.3d 299, 302 (7th Cir. 2002). Further, GM has registered its Chevrolet marks continuously for much more than five years, which renders them "incontestable." See 15 U.S.C. § 1065; Doc. 13-1. There is no genuine issue that GM owns a valid and protectable mark entitling it to nationwide priority for the use of the "Chevrolet" name associated with vehicles and the Chevrolet mark.

GM also must show that Rapp's improper use of the Chevrolet mark creates "a likelihood of confusion." B & B Hardware, 569 F.3d at 389. Likelihood of confusion between GM's trademarks and Rapp's allegedly infringing use of the mark is determined by weighing six factors known in the Eighth Circuit as the SquirtCo factors:

> 1) the strength of the trademark owner's mark; 2) the similarity between the trademark owner's mark and the alleged infringing mark; 3) the degree to which the allegedly infringing services competes with the trademark owner's services; 4) the alleged infringer's intent to confuse the public; 5) the degree of care reasonably expected of potential customers; and 6) evidence of actual confusion.

Cmty. of Christ, 634 F.3d at 1009 (citing SquirtCo v. Seven-Up Co., 628 F.2d 1086, 1091 (8th Cir. 1980)). Under the SquirtCo factors, "no one factor controls, and because the inquiry is inherently case-specific, different factors may be entitled to more weight in different cases." Id. (quoting Kemp v. Bumble Bee Seafoods, Inc., 398 F.3d 1049, 1053 (8th Cir. 2005)).

Under the first factor, a "strong and distinctive trademark is entitled to greater protection

than a weak or commonplace one." Sensient Techs. Corp. v. SensoryEffects Flavor Co., 613 F.3d 754, 763 (8th Cir. 2010) (internal quotation marks and citations omitted). GM's Chevrolet mark is strong and distinctive. The Chevrolet mark has been in use for over one hundred years, has been promoted nationally, and has become highly recognizable to the general public. Further, the word "Chevrolet"[1] is not a generic or descriptive term, entitled to lesser or even no protection, but appears to a mark of a somewhat "arbitrary or fanciful" nature, which is entitled to a high level of protection. See Duluth News-Tribune, a Div. of Nw. Publ., Inc. v. Mesabi Publ'g Co., 84 F.3d 1093, 1096 (8th Cir. 1996).

Second, this Court considers the similarity between the mark owned by GM and the mark used by Rapp. See Cmty. of Christ 634 F.3d at 1009. GM owns the mark to the word "Chevrolet," Doc. 13-1, and Rapp is using the same word "Chevrolet" in its name, website, and Facebook page. Therefore, "the similarity between the trademark owner's mark and the alleged infringing mark" militates for protection. See Mid-List Press v. Nora, 374 F.3d 690, 693 (8th Cir. 2004). Indeed, in a trademark case involving holdover franchisees using a trademark name, the Eighth Circuit has determined there to be a likelihood of confusion. See Downtowner/Passport Int'l Hotel Corp. v. Norlew, Inc., 841 F.2d 214, 219 (8th Cir. 1988) (upholding injunction of terminated Downtowner franchisee that continued using franchiser's trademarked signs and paraphernalia for a year after franchise agreement was revoked). Other courts similarly hold that franchisees who continue to use a franchiser's trademarked signs after

---

[1] The Chevrolet brand derives from the name of Louis Chevrolet who with William Durant and investment partners founded Chevrolet Motor Car Company in 1911. Louis Chevrolet was a Swiss race car driver and automotive engineer, while William Durant was a co-founder of General Motors and pioneer in the automotive industry.

the franchise agreement was terminated create a likelihood of confusion. See Burger King Corp. v. Mason, 710 F.2d 1480, 1492 (11th Cir. 1983) (stating that "[c]ommon sense compels the conclusion that a strong risk of consumer confusion arises when a terminated franchisee continues to use the former franchiser's trademarks"); Mobil Oil Corp. v. Auto-Brite Car Wash, Inc., 615 F.Supp. 628, 631 (D. Mass. 1984) (finding likelihood of confusion when franchiser terminated franchise relationship, but franchisee failed to remove fran chiser's signs and continued selling franchiser's products). Also, a likelihood of confusion is easily met when the defendant is not using a mark similar to the plaintiff's, but when the defendant uses the same mark as that owned by the plaintiff. See Mid-List Press, 374 F.3d at 693 (holding that in the typical Lanham Act case, the wrongdoer uses a mark similar to the plaintiff's mark, but "'[f]ew are the cases demonstrating a more obvious and imminent likelihood of confusion'" than when the case "'involves a situation where the wrongdoer used the plaintiff's actual mark, not merely a similar mark'") (quoting Johnson v. Jones, 149 F.3d 494, 503 (6th Cir. 1998)).

Third, a court looks at "the degree of competition between products." Sensient, 613 F.3d at 766 . "If the two companies' products are closely related, confusion among customers is more likely." Id. (citing Davis v. Walt Disney Co., 430 F.3d 901, 904 (8th Cir. 2005)). "[P]roper application of this factor requires exploration of the likelihood that consumers would draw a connection between the two products and be confused as to the identities of their respective sources." Kemp, 398 F.3d at 1056. The allegedly infringing services of Rapp compete somewhat with GM's services, in that both Rapp and GM are in the business of selling automobiles. With Rapp using the word "Chevrolet" in its name and marketing, consumers likely would believe that Rapp is and remains affiliated with GM and its Chevrolet business.

Fourth, the Court is to consider the alleged infringer's intent to confuse the public. See Cmty. of Christ, 634 F.3d at 1009. In considering that factor, a court "must stand in the shoes of the ordinary purchaser, buying under the normally prevalent conditions of the market and giving the attention such purchasers usually give in buying that class of goods." Sensient, 613 F.3d at 769 (internal quotation marks and citation omitted). Chevrolet is a well known brand of automobiles associated with GM. Rapp has asserted in pretrial correspondence that it has not been using GM trademarks or "Chevrolet 'Bow Tie' marks in any of our advertising after the termination of our Chevrolet selling agreement." Doc. 1-9. However, Rapp sent that letter on "Rapp Chevrolet" letterhead, has continued with a website under the name Rapp Chevrolet, and has launched a Facebook page under the name of Rapp Chevrolet. Rapp's primary motivation may be to avoid costs associated with changing its name and to continue to do business under a name it long had used. However, the Chevrolet mark belongs to GM and Rapp doing business as "Rapp Chevrolet" presents confusion to the extent that the consumer likely is to believe that an affiliation remains between GM and Rapp.

Fifth, the Court is to consider the degree of care reasonably expected of potential customers. Duluth News-Tribune, 84 F.3d at 1099 (8th Cir. 1996). This factor examines "the kind of product, its cost and the conditions of purchase" to determine "whether the degree of care exercised by the purchaser can eliminate the likelihood of confusion which would otherwise exist." SquirtCo., 628 F.2d at 1091. It is difficult to infer from the facts the degree of care reasonably expected of a potential car buyer, but it appears likely that a purchaser looking to buy a Chevrolet from a licensed Chevrolet dealer could not easily eliminate the likelihood of confusion on his own in this circumstance. Rapp Chevrolet is not a licensed dealer, yet the

marketing materials that consumers would rely on make it appear that it is.

And, finally, the Court is to consider evidence of actual confusion. See Cmty. of Christ, 634 F.3d at 1009. However, a trademark plaintiff is not required to show actual confusion in order to prevail, because "actual confusion is just one of six factors to consider." First Nat'l Bank Sioux Falls v. First Nat'l Bank SD, 679 F.3d 763, 769 (8th Cir. 2012). "[T]here are at least three evidentiary routes to prove a likelihood of confusion—survey evidence, evidence of actual confusion, and/or argument based on an inference arising from a judicial comparison of the conflicting marks themselves and the context of their use in the marketplace." Heartland Bank v. Heartland Home Fin., Inc., 335 F.3d 810, 821 (8th Cir. 2003). The material facts presented by GM lack information as to incidents of actual confusion. Therefore, this factor appears to weigh in favor of Rapp, but evidence of actual confusion is not required in order to prevail. In weighing the six SquirtCo factors and the alternative ways of proving likelihood of confusion, as a matter of law, GM has satisfied its burden of showing likelihood of confusion as a matter of law. See First Nat'l Bank, 613 F.3d at 769-70.

**2. Trademark Dilution**

GM also seeks summary judgment on its trademark dilution claim, which is an available claim under the Lanham Act and allows the owner of a famous mark to receive an injunction against another who "at any time after the owner's mark has become famous, commences use of a mark . . . in commerce that is likely to cause dilution by blurring or dilution by tarnishment of the famous mark, regardless of the presence or absence of actual or likely confusion, of competition, or of actual economic injury." See 15 U.S.C. § 1125(c)(1); see also Luigino's, Inc. v. Stouffer Corp., 170 F.3d 827, 832 (8th Cir. 1999) (noting that a trademark dilution claim

under federal law requires a showing that the trademark is famous, that the infringer began using a similar or identical mark after the trademark became famous, and that the infringing mark dilutes the distinctive quality of the trademark). A mark is "famous" when the mark is "widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner." 15 U.S.C. § 1125(c)(2)(A).

The Lanham Act defines "dilution by blurring" as the "association arising from the similarity between a mark or trade name and a famous mark that impairs the distinctiveness of the famous mark." 15 U.S.C. § 1125(c)(2)(B). Under § 1125(c)(1), a court is to consider in deciding whether a mark is distinctive or famous such things as the degree of inherent or acquired distinctiveness of the mark, the duration and extent of use of the mark in connection with the goods and services for which the mark is used, the duration and extent of advertising and publicity of the mark, the geographical extent of the trading area in which the mark is used, the channels of trade for the goods or services with which the mark is used, the degree of recognition of the mark in the trading area and channels of trade of the mark's owner and the person against whom the injunction is sought, the nature and extent of use of the same or similar marks by third parties, and whether the mark is federally registered. 15 U.S.C § 1125(c)(1).

The Chevrolet mark is famous and incontestable and it became famous before Rapp was granted the right to use it. Rapp's use of the "Chevrolet" name in connection with its sale of cars is using the identical name, albeit without the bow tie logo, and dilutes the Chevrolet mark as a matter of law. Therefore, summary judgment is proper on the trademark dilution claim.

### B. Breach of Contract Claim

This Court has supplemental jurisdiction over the breach of contract claim. See 28

U.S.C. § 1367(a) (giving district courts supplemental subject matter jurisdiction over related claims between the litigants provided the claims are so related that the "form part of the same controversy"); Craigslist, Inc. v. Naturemarket, Inc., 694 F. Supp. 2d 1039, 1051-52 (N.D. Cal. 2010) (finding supplemental jurisdiction over state law claims, including breach of contract, when plaintiff asserted claims for copyright infringement under federal law and state law claims were "so related to [the] claims" under federal law that jurisdiction was proper). A consideration of the breach of contract claim establishes that Rapp no longer has the right to use "Chevrolet" as it has in its marketing and name.

GM alleges that Rapp has breached the Dealer Agreement, which in Article 17.5 stated:

> Upon termination of this Agreement, Dealer agrees to immediately discontinue, at its expense, all use of Marks, including but not limited to removal of all Marks from any and all Dealer owned signs. Thereafter, Dealer will not use, either directly or indirectly, any Marks or other confusingly similar marks in a manner that General Motors determines is likely to cause confusion or mistake or deceive the public.

Doc. 13-2 at 4. GM terminated the Dealer Agreement with Rapp. Rapp's entitlement to use the Chevrolet mark and name then terminated, other than as a part of advertising what makes of vehicles it had in its inventory. Rapp has continued to use "Chevrolet" in its name and marketing, despite termination of the Dealer Agreement and despite the language of Article 17.5. Even without using the Chevrolet "bow tie" logo, the use of the Chevrolet name as Rapp has done is "use, either directly or indirectly, [of] any Marks or other confusingly similar marks in a manner that . . . is likely to cause confusion or mistake or deceive the public." Doc. 13-2 at 4.

### C. Entitlement to Permanent Injunction

The Lanham Act authorizes this Court to issue a permanent injunction to prevent

14

infringement or dilution of trademark rights. 15 U.S.C. §§ 1116(a) and 1125(c)(1). If a trademark plaintiff has succeeded on the merits, a preliminary injunction may be granted if GM can show: (1) actual success on the merits; (2) the threat of irreparable harm; (3) that the harm to GM outweighs any possible harm to others; and (4) that the injunction serves the public interest. Cmty. of Christ, 634 F.3d at 1012. As discussed above, GM succeeded on the merits of its claims so this Court will move on to consideration of the other factors.

Generally, when there is a trademark violation, irreparable injury is presumed from the existence of likelihood of confusion. Id. (holding that the plaintiff faced irreparable harm from defendant's continued use of its marks because "in trademark law, injury is presumed once a likelihood of confusion has been established"); see also Gen. Mills, Inc. v. Kellogg Co., 824 F.2d 622, 625 (8th Cir. 1987) ("Since a trademark represents intangible assets such as reputation and goodwill, a showing of irreparable injury can be satisfied if it appears that Kellogg can demonstrate a likelihood of consumer confusion."); Century 21 Real Estate Corp v. Sandlin, 846 F.2d 1175, 1180 (9th Cir. 1988) (noting that "[i]njunctive relief is the remedy of choice for trademark and unfair competition cases, since there is no adequate remedy at law for the injury caused by a defendant's continuing infringement"); Marco, Inc. v. Advanced Sys., Inc., No. 11-4072-KES, 2011 WL 2748691, at *10 (D.S.D. July 13, 2011) ("Loss of intangible assets such as reputation and goodwill can constitute irreparable injury because those items are not readily compensable by monetary damages.") (internal quotation marks and citation omitted).

The balance of hardships weighs strongly in favor of GM, the owner of the Chevrolet mark. See First Nat'l Bank, 679 F.3d at 772. This Court recognizes that Rapp, in needing to avoid calling itself "Rapp Chevrolet" in the future and its marketing, will incur some cost and

hardship. However, that is not the sort of hardship that weighs in favor of permitting trademark infringement to continue. See PBM Prods., LLC v. Mead Johnson & Co., 639 F.3d 111, 127 (4th Cir. 2011) (finding balance of hardship favoring trademark owner because infringer "simply has no equitable interest in perpetuating the false and misleading claims"); Concrete Mach. Co. v. Classic Lawn Ornaments, Inc., 843 F.2d 600, 612 (1st Cir. 1988) ("Where the only hardship that the defendant will suffer is lost profits from an activity which has been shown likely to be infringing, such an argument in defense merits little equitable consideration.") (internal quotation marks and citation omitted).

Finally, an injunction here appears to serve the public interest, because the public has a right "not to be deceived or confused" through misuse of trademarks. First Nat'l Bank Sioux Falls v. First Nat'l Bank SD, 655 F. Supp. 2d 979, 1001 (D.S.D. 2009). The public interest lies with consumers being able to distinguish between different providers of goods and services. The use by Rapp of "Rapp Chevrolet" would lead a consumer to believe, mistakenly at this point, that GM and Rapp remain affiliated.

### D. Other Issues

GM seeks monetary damages and attorneys fees. The record before this Court on the Motion for Partial Summary Judgment is insufficient to grant such relief at this time. GM also asks that discovery be stayed pending resolution of this motion for summary judgment. Because this Court is now ruling on the Motion for Partial Summary Judgment, there is no reason to stay discovery on any remaining issue.

### IV. Conclusion

For the reasons set forth above, it is hereby

16

ORDERED that Plaintiff's Motion for Partial Summary Judgment as to Liability, Entry of Permanent Injunction, and to Stay Discovery while Motion is Pending, Doc. 12, is granted in part and denied in part. It is further

ORDERED that partial summary judgment under Rule 56 of the Federal Rules of Civil Procedure hereby enters in favor of GM and against Rapp on Count I for Rapp's trademark and service mark infringement, on Count III for Rapp's dilution of GM's trademark, and on Count IV for Rapp's breach of Article 17.5 of the Dealer Agreement regarding restrictive use of GM trademarks following termination of the Dealer Agreement. It is further

ORDERED that, to the extent that GM seeks summary judgment on any monetary or attorney fee claim, that partial summary judgment is denied at this time on those claims. It is further

ORDERED that GM's request for a stay of discovery is denied. It is further

ORDERED that a permanent injunction under Rule 65 of the Federal Rules of Civil Procedure enters permanently enjoining Rapp, its officers, employees, agents, successors and assigns from engaging in the following conduct:

> 1. Displaying, imitating, copying, or making any unauthorized use of the GM Marks, or marks likely to cause confusion with them, including, but not limited to, using the name "Rapp Chevrolet" in any marketing or signage.
>
> 2. Importing, manufacturing, producing, distributing, circulating, selling, offering for sale, advertising, promoting or displaying any service or product using any simulation, reproduction, counterfeit, copy, or colorable imitation of the GM Marks, including, but not limited to, using the name "Rapp Chevrolet" in any marketing or signage.
>
> 3. Using any simulation, reproduction, counterfeit, copy or

    colorable imitation of the GM Marks in connection with the promotion, advertisement, display, sale, offer for sale, manufacture, production, circulation or distribution of any product or service, including, but not limited to, using the name "Rapp Chevrolet" in any marketing or signage.

    4. Using any false designation of origin or false description (including, without limitation, any letters, symbols, or designs constituting the GM Marks) or performing any act, which can, or is likely to, lead members of the trade or public to believe that any service or product manufactured, distributed or sold by Defendant is in any manner associated or connected with GM or the GM Marks, or is sold, manufactured, licensed, sponsored, approved or authorized by GM, including, but not limited to, using the name "Rapp Chevrolet" in any marketing or signage.

It is further

ORDERED that Rapp may use GM marks that may be authorized or may constitute "fair use," including such things as holding itself out as Rapp Automotive or Rapp Motors and noting among vehicles available for sale from its lot, certain vehicles that happen to be Chevrolet or other GM make vehicles. That is, Rapp may use GM vehicle model names solely for the purpose of identifying and advertising its inventory for sale. It is further

ORDERED that Rapp allow an authorized designee of GM to enter its business premises during business hours to inspect and determine that GM marks are not being inappropriately used. It is further

ORDERED that Rapp discontinue use of any internet advertising, website, or Facebook page using "Rapp Chevrolet" as its name or website. It is further

ORDERED that Rapp deliver to GM or certify to GM the destruction of all promotional and advertising materials, labels, tags, signs, prints, packages, videos or other such materials in its possession or under its control, bearing or using unauthorized versions of the GM Marks or

any simulation, reproduction, counterfeit, copy or colorable imitation thereof, and all plates, molds, matrices and other means of making the same, pursuant to 15 U.S.C. § 1118. It is finally

ORDERED that Rapp share a copy of this Opinion and Order and Permanent Injunction with all of its owners, officers, employees and agents, together with instruction to no longer hold itself out as "Rapp Chevrolet" in any setting.

Dated May 21st, 2013.

BY THE COURT:

ROBERTO A. LANGE
UNITED STATES DISTRICT JUDGE